UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JUDITH POTTER, an individual, | Case No. 3:17-cv-1409-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| INTERNATIONAL BUSINESS MACHINE CORPORATION (dba IBM, INC.), a New York Corporation, SETERUS, INC., (fka KYANITE FINANCIAL BUSINESS SERVICES, INC.), a Delaware corporation, and MICHAEL PERRY, an individual, SHANNON STOCK, an individual, and AMANDA LOWE, an individual, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Judith Potter ("Potter") filed this lawsuit in state court against her former employers alleging claims for minimum-wage violations, breach of contract, and retaliation. Defendants timely removed the lawsuit to this court asserting diversity jurisdiction and identifying defendant Amanda Lowe ("Lowe") as a "sham defendant." Presently before the court is Potter's motion to remand, and her request for attorney fees and costs related to her motion.

The court finds Defendants failed to meet their heavy burden to establish Potter obviously failed to state a cause of action against Lowe according to the settled rules of the state. Accordingly, Lowe was not fraudulently joined, this court lacks diversity jurisdiction, and this lawsuit should be remanded to state court. However, Potter's request for attorney fees and costs should be denied.

*Background*

Defendant Seterus, Inc. ("Seterus"), is a fully-integrated mortgage loan servicing company and a wholly-owned subsidiary of defendant International Business Machine Corporation ("IBM"). (Lowe Decl., ECF No. 19, ¶¶ 2, 4.) From December 21, 2015, to June 8, 2017, Potter worked for Seterus as a bankruptcy asset specialist at a loan servicing center in Beaverton, Oregon. (Am Compl., ECF No. 1-1 ("Compl."), ¶ 7; Lowe Decl. ¶ 4; Terbenche Decl. ECF No. 20, ¶ 4.) Initially, Potter was hired by a third party and assigned to IBM as a contractor. (Terbenche Decl. ¶ 4.) In October 2016, IBM hired Potter directly. (Terbenche Decl. ¶ 5; Ex. 1.)[1]

While working at Seterus, Potter reported directly to Maggie Parrish ("Parrish") and Megan Snyder ("Snyder"), both of whom worked in Seterus's Beaverton office and served as Potter's day-

---

[1]Potter alleges she was jointly employed by IBM and Seterus. For the purposes of this motion, this distinction is irrelevant.

to-day managers. (Lowe Decl. ¶ 6.) Parrish and Snyder reported to defendant Shannon Stock ("Stock"), Assistant Vice President of the Bankruptcy group, who worked out of the Raleigh, North Carolina office and was only infrequently at the Beaverton office. (Lowe Decl. ¶¶ 6, 13.) Lowe was the Assistant Vice President of Operational Controls responsible for general operations of the foreclosure department as well as risk and compliance, and worked out of the Beaverton office. (Lowe Decl. ¶¶ 3, 4.) Both Stock and Lowe reported to defendant Michael Perry ("Perry"), Vice President of Default Management. (Lowe Decl. ¶ 6.)

Potter alleges she was not allowed rest breaks or meal periods,[2] not paid overtime, and not paid timely, and IBM and Seterus did not properly report and pay taxes, all in violation of Oregon law. (Compl. ¶¶ 9, 10, 16, 17, 18, 19.) In late December 2016, Potter filed complaints with Perry alleging wage and hour violations, abusive behavior by Stock, and denial of benefits based on complaints about management abuse. (Compl. ¶ 11.) Potter alleges in early January 2017, "Defendants called Plaintiff into a meeting with Michael Perry on the phone and told her they had received her complaint." (Compl. ¶ 12.) When nothing happened, Potter followed up with emails. (Compl. ¶ 12.) Potter learned Stock subsequently accused her of falsifying information by inflating settlements. (Compl. ¶ 12.) IBM terminated Potter on June 7 or 8, 2017. (Compl. ¶ 7; Lowe Decl. ¶ 12.) Potter alleges she was terminated, at least in part, because of her complaints. (Compl. ¶ 14.)

Potter asserts claims against IBM and Seterus for minimum-wage violations under OR. REV. STAT 653.025; overtime violations under OR. REV. STAT.653.261; late wage payments under OR. REV. STAT. 652.140; failure to provide an itemized wage statement under OR. REV. STAT. 652.610;

---

[2]Potter inconsistently alleges she was denied her meal and rest breaks between December 21, 2015 and June 8, 2017 in paragraph 9 and between October and December 22, 2017, in paragraph 15. (Compl. ¶¶ 9, 15.)

breach of contract; and whistleblower retaliation under OR. REV. STAT. 659A.199. Potter's sole claim against Perry, Stock, and Lowe (the "Individual Defendants") is for aider and abettor liability under OR. REV. STAT.659A.030(1)(g).

In support of her claim against Lowe, Potter alleges:

> At all times material to this action, Defendant Amanda Lowe (herein referred to as "Lowe") is a natural person residing in Oregon. Defendant [Lowe][3] was employed by Defendant IBM and Defendant Seterus and managed the Plaintiff subject to [her] terms of employment.
>
> * * *
>
> Defendant Lowe, an Assistant Vice President, holds a management role and was aware of the work conditions Plaintiff and other employee[s] were subject to. Defendant Lowe did not address the issues raised by Plaintiff. A lack of response and leadership on the part of Ms. Lowe allowed the wage and hour abuses to continue.
>
> * * *
>
> Amanda Lowe aided, abetted, incited, compelled and/or coerced the discrimination, retaliation, and harassment toward plaintiff relating to her reports of illegal wage theft, retaliation, and harassment, and her good faith reports of conduct she believed to be illegal.

(Compl. ¶¶ 6, 13, 40.)

Lowe represents she did not supervise, hire, or review Potter's performance, and had no authority to counsel, discipline, or adjust Potter's grievances. (Lowe Decl. ¶ 7.) Parrish and Snyder were Potter's direct supervisors in the Beaverton office and available to assist her with any concerns. (Lowe Decl. ¶ 13.) However, according to Potter, Lowe held a management role and was generally the person of authority in the Beaverton office. (Potter Decl., ECF No. 12, ¶¶ 3, 4.) Additionally, Potter represents Lowe regularly signed off on Potter's time cards and was on notice of the wage and

---

[3] Potter appears to mistakenly refers to Lowe as Stock.

hour violations reported by Potter. (Potter Decl. ¶ 6.) Lowe admits she provided administrative support to the bankruptcy team from time-to-time by executing court documents or settlement agreements requiring the signature of an Assistant Vice President. (Lowe Decl. ¶ 13.)

Occasionally, employees in the Beaverton office from other departments and over which Lowe had no control would come to her with concerns. (Lowe Decl. ¶ 8.) In these instances, Lowe generally consulted with human resources and let them work on a resolution. (Lowe Decl. ¶ 8.) On one occasion in October 2016, Potter approached Lowe with a complaint about the way in which Stock distributed work to her team. (Lowe Decl. ¶ 9.) Lowe relayed Potter's complaint to human resources and Perry, and later learned it was being investigated. (Lowe Decl. ¶ 9.) According to Lowe, Potter did not complain directly to Lowe about rest or meal breaks and Lowe was not independently aware of whether Potter took such breaks or properly recorded her time. (Lowe Decl. ¶ 10.) Lowe represents she was not involved in, and did not provide any input, into Potter's termination, which was a part of a reduction in workforce due to financial circumstances. (Lowe Decl. ¶¶ 11, 12.)

Potter filed this action in the Circuit Court of the State of Oregon for the County of Multnomah on June 15, 2017, and amended her complaint to add Lowe as a defendant on August 8, 2017. IBM, Seterus, and the Individual Defendants (collectively "Defendants"), filed a notice of removal on September 8, 2017, identifying Lowe, the sole defendant with Oregon citizenship, as a sham defendant fraudulently joined to defeat diversity jurisdiction. Potter filed a motion to remand contending she has alleged a viable claim against Lowe, thereby defeating Defendants' alleged diversity jurisdiction.

*Legal Standard*

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Such removal can be based on either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. §§ 1441(b) and (c) (2017). A plaintiff who believes an action has been improperly removed to federal court may file a motion to remand. 28 U.S.C. § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id*.

*Discussion*

Defendants removed this action asserting the existence of diversity jurisdiction. Under 28 U.S.C. § 1332(a), district courts have original jurisdiction of all civil actions in which the matter in controversy exceeds the sum or value of $75,000 and the parties are citizens of different states. In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, *i.e.*, all plaintiffs must have citizenship different than all defendants. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Consequently, to be valid, removal of a state action based on diversity "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067

(9th Cir. 2001). One exception to the requirement of complete diversity, however, is when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

A district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent. *Stroteck Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002). Fraudulent joinder does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979) *aff'd*, 710 F.2d 549 (9th Cir. 1983). As the Ninth Circuit explained in *Morris*:

> Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris*, 236 F.3d at 1067 (internal quotations and citations omitted).

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citations omitted). Accordingly, when faced with fraudulent joinder claims, the court may look beyond the pleadings and consider evidence similar to that offered in summary judgment proceedings, such as affidavits and deposition testimony. *Morris*, 236 F.3d at 1068 (citation omitted). A district court resolves all questions of disputed fact and controlling law against the party seeking removal. *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011)(citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995).

The Ninth Circuit has made clear that the party invoking federal court jurisdiction has a very heavy burden since, in addition to the strong presumption against removal jurisdiction, there is a "general presumption against fraudulent joinder" which a defendant asserting fraudulent joinder must overcome. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)(quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)). Moreover, "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton*, 494 F.3d at 1206.

Potter asserts a single claim against Lowe for aider and abettor liability under OR. REV. STAT. 659A.030(1)(g). (Compl. ¶ 40.) OR. REV. STAT. 659A.030(1)(g) provides that: "[i]t is an unlawful employment practice . . . [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Chapter 659A makes it unlawful:

> for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employees has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation.

OR. REV. STAT.659A.199 (2017). Potter specifically alleges Lowe "aided, abetted, incited, compelled and/or coerced the discrimination, retaliation, and harassment toward plaintiff relating to her reports of illegal wage theft, retaliation, and harassment, and her good faith reports of conduct she believed to be illegal."

Potter clearly alleges Lowe assisted in the other defendants' retaliation against Potter because of her reports to Perry about wage and hour violations, abusive behavior by Stock, and denial of benefits based on complaints about management abuse. Potter does not allege Lowe engaged in, or

aided and abetted, the activity about which Potter complained to Perry. Moreover, Lowe may not be held liable for aiding and abetting such activity because OR. REV. STAT. 659A.030(1)(g) is expressly limited to violations of Chapter 659A and does not apply to claims brought under Chapters 652 and 653. *White v. Amedisys Holding, LLC*, No. 3:12-cv-01773-ST, 2012 WL 7037317, at *5 (D. Or. Dec. 18, 2012)("The reference to 'this chapter' is to ORS Chapter 659A, which forbids certain unlawful employment practices."); *Grosz v. Farmers Ins. Exchange*, No. CV-10-563-ST, 2010 WL 5812667, at *8 (D. Or. Nov. 9, 2010)("[A]iding and abetting liability under ORS 659A.030(1)(g) does not apply to claims for wage claim retaliation under ORS 652.355 or 653.060."). Accordingly, Potter's claim against Lowe is limited to Lowe's involvement in Defendants' retaliation against Potter.

Oregon courts have held a co-employee may be liable as an aider and abettor under OR. REV. STAT.659A.030(1)(g). *Schram v. Albertson's Inc.*, 146 Or. App. 415, 422 (1997)("The plain text of the statute clearly encompasses both employees and employers and reaches those employees who aide and abet unlawful employment practices."); *Price v. Taco Bell Corp.*, 896 F. Supp. 1022, 1024 (D. Or. 1995). However, neither party has offered case law from the Oregon courts discussing or analyzing a claim for aider and abettor liability under OR. REV. STAT. 659A.030(1)(g). This district recently acknowledged the absence of such case law. *See Hernandez v. FedEx Freight, Inc.*, Case No. 2:16-cv-01495-SU, 2017 WL 3120283, at *2  (D. Or. June 12, 2017)("Neither party has cited authority to establish, or sought to explain or argue, precisely what constitutes aiding, abetting, etc., discrimination, retaliation, or other forbidden acts under Or. Rev. State chapter 659A. For instance, neither party has laid out the elements of a *prima facie* case of aiding discrimination under Or. Rev. Stat. § 659A.030(1)(g). The Court has researched the matter itself and has not found authority

discussing what is necessary to plead a § 659A.030(1)(g) claim. The Court thus looks to general tort law principles for guidance.") Additionally, this district has concluded the law of Oregon is not "'settled' with respect to supervisor liability under § 659A.030(1)(g), particularly in light of the plain language of the statute." *Chambers v. United Rentals, Inc.*, Civ. No. 10-62-AA, 2010 WL 2730944, at *2 (D. Or. July 7, 2010).

The fraudulent joinder of a non-diverse defendants must be considered "according to the settled rules of the state." At least one judge in this district has granted a motion for remand based solely on the absence of settled Oregon law construing OR. REV. STAT.659A.030(1)(g) to allow Oregon courts to determine whether the plaintiff had stated a viable claim under OR. REV. STAT.659A.030(1)(g) against a non-diverse defendant. *Chambers*, 2010 WL 2730944, at *2. While remand may be appropriate based solely on the absence of settled law from the Oregon courts, the court will consider whether Potter's allegations and the evidence offered by the parties, viewed in a light most favorable to Potter, and taking into account Defendants' heavy burden and the lack of settled state law in this area, state a claim against Lowe under OR. REV. STAT.659A.030(1)(g). In so doing, the court will "not consider whether [Lowe] is actually liable to [Potter], but only whether there is a possibility that [Lowe] might be found liable." *Gaither v. John Q. Hammons Hotel Mgmt., LLC*, No. CV 09-629-MO, 2009 WL 9520797, at *4 (D. Or. Sept. 3, 2009).

A plaintiff asserting a claim for retaliation under OR. REV. STAT.659A.199 must show: "(1) she as engaging in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Larmanger v. Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1049 (D. Or. 2012). In the absence of settled Oregon law, this district has concluded "that liability for aiding and abetting,

etc. discrimination or retaliation in violation of OR. REV. STAT.659A.030(1)(g) requires at a minimum that the aiding party intended that the complainant be discriminated or retaliated against, or understand that he was aiding in acts of discrimination or retaliation." *Hernandez*, 2017 WL 3120283, at * 3.

Potter specifically alleged Lowe managed her in some capacity and failed to address issues raised by Potter. Lowe concedes that, on at least one occasion, Potter complained directly to Lowe about Stock's management. Potter alleges "Defendants," which viewed in Potter's favor would include Lowe, called Potter into a meeting to discuss her complaints, implying Lowe was aware of Potter's complaints. Furthermore, as Lowe is the only Individual Defendant working in the Beaverton office, it is reasonable to assume she was the defendant tasked with calling Potter into the meeting. Finally, Lowe generally alleges she was fired without identifying the individual who fired her, the parties involved in the decision-making process, or Lowe's involvement in such process.

Judge Stewart has, on two occasions, found similar allegations sufficiently demonstrate a possibility that a co-employee could be found liable for aiding and abetting retaliatory conduct "given the lack of settled Oregon law in this area." *White*, 2012 WL 7037317, at *6; *Demont v. Starbucks Corp.*, No. CV-10-644-ST, 2010 WL 5173314, at *7 (D. Or. Aug. 26, 2010). In *White*, Judge Stewart held passive allegations that the plaintiff was subject to write-ups, discipline, and retaliation in response to her failure to comply with what she believed to be fraudulent reporting practices were sufficient to demonstrate a possibility the director of the facility in which plaintiff worked, and who allegedly created a hostile work environment in retaliation for her complaints, could be found liable for aiding and abetting in violation of OR. REV. STAT.659A.030(1)(g). *White*, 2012 WL 7037317, at *4, *6. In *Demont*, Judge Stewart found the plaintiff had alleged sufficient

facts to demonstrate a possibility his supervisor and the district manager could be found liable for aiding and abetting. *Demont*, 2010 WL 5173314, at *7. The plaintiff alleged, in conclusory terms, that the defendants "participated in and assisted each other in ongoing discrimination, harassment, and retaliation against [him] in the workplace" and "violated ORS 659A.030(1)(g) by aiding each other in efforts to perpetuate ongoing discrimination, harassment, and retaliation." *Id*. at *6. The plaintiff alleged both defendants were angry with him and the district manager disciplined him. *Id*. at *7. Judge Stewart noted the allegations did not make clear who made the decision to remove the plaintiff from the schedule or terminate the plaintiff and presumed he was attempting to allege all individual defendants were involved in the termination decision. *Id*. at *6, *7. Moreover, in a third case, Chief Judge Mosman found allegations that an assistant general manager "knew or should have known of [the] plot to get [plaintiff] fired . . . [and] was complicit in it," "pretextually disciplined and suspended" plaintiff, and "aided and abetted in each of the unlawful acts alleged" by plaintiff were sufficient to make the manager a proper defendant under Oregon law, thereby defeating diversity jurisdiction. *Gaither*, 2009 WL 9520797, at *2, *4.

Viewing disputes in Potter's favor, Potter has alleged or presented evidence Lowe has some managerial authority over her, was aware of Potter's reports of violation of wage and hour laws and Stock's abusive behavior, participated in the meeting in which such complaints were discussed, and, presumably, was involved in the decision to terminate Potter. In view of these allegations and in light of the lack of settled Oregon law, the court finds Defendants failed to meet their heavy burden to establish Potter has failed to state a claim against Lowe under OR. REV. STAT.659A.030(1)(g). Accordingly, Lowe was not fraudulently joined, is a proper defendant and her presence defeats diversity jurisdiction. Defendants' motion to remand should be granted.

Potter also asks the court to award attorney fees and costs incurred in contesting removal of this action under 28 U.S.C. § 1447(c).  Potter argues Defendants lacked an objectively reasonable basis for removing this action.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Removal is not objectively unreasonable merely because the court orders remand. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).  Instead, courts assess whether "the relevant case law clearly foreclosed the defendant's basis for removal." *Id.* at 1066–67.

Here, Defendants had an objectively reasonable basis for removal. This district has on more than one occasion acknowledged the lack of settled Oregon law with regard to OR. REV. STAT.659A.030(1)(g).  Consequently, Defendants relied on objectively reasonable legal arguments because case law did not "clearly foreclose[]" Defendants' arguments. *Lussier*, 518 F.3d at 1066.  Accordingly, the court denies Potter's request for attorney fees.

## Conclusion

Potter's motion (ECF No. 11) to remand should be GRANTED and her request for attorney fees should be DENIED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **April 2, 2018**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served

with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 14th day of March, 2018.

                                            /s/ John V. Acosta
                                               JOHN V. ACOSTA
                                     United States Magistrate Judge